UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHICAGO'S PIZZA INC., | No. 2:19-cv-02373-DJC-CKD |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS |
| v. | |
| KSM PIZZA, INC., | |
| Defendant. | |

Plaintiff Chicago's Pizza ("CPI" or "plaintiff") seeks default judgment for trademark infringement, false designation of origin, and unfair competition against defendant, KSM Pizza ("defendant"). (See ECF No. 68.) Plaintiff also seek a permanent injunction, and plaintiff's reasonable attorneys' fees and costs in the amount of $139,859.29. (Id.) The undersigned took plaintiff's motion under submission without oral argument in accordance with Eastern District Local Rule 230(g). (ECF No. 71.) Defendant has not filed an opposition to the motion for default judgment in accordance with Local Rule 230(c). The undersigned issues the following findings and recommendations upon review of the documents in support of this motion and good cause appearing.

/////

1

I. Background

A. Underlying Facts

Plaintiff operates pizza restaurants in California and in other states via licensing arrangements. (ECF No. 1 at ¶ 9). Plaintiff's restaurants offer "a unique blend of traditional and authentic Indian-style pizzas" which use locally sourced ingredients and an array of Indian and Middle-Eastern spices. (Id.) Plaintiff's logo, which it has used since July 2015, contains the words "CHICAGO'S PIZZA" in red capitalized letters, outlined with black trim, with the word "PIZZA" stacked directly below the word "CHICAGO'S". (Id.) Two horizontal green bars are on either size of the word "PIZZA," totaling four bars. (Id.) Beneath the bars and the word "PIZZA" are the words "With-A-Twist," written in black script, with only the first letters of each word capitalized. (Id.)

Plaintiff alleges that, "as result of extensive advertising, [its logo] has become distinctive and is widely recognized by the general consuming public of the United States as a designation for the source" of its goods and services. (Id. at ¶ 10). To protect the extensive goodwill it has built in its logo, plaintiff obtained California Trademark Registration No. 00120908 (the "908 Registration") for its logo for use in connection with a variety of Indian-style pizzas, breadsticks, and chicken wings. (Id., ¶ 11). The California Secretary of State issued the 908 Registration on February 23, 2016. (Id.)

In early 2019, defendant opened a restaurant less than six miles from plaintiff's nearest location, which also offered Indian-style pizzas featuring an array of Indian and Middle-Eastern spices and wings. (Id. at ¶ 12.) Like plaintiff's logo, defendant's logo contains the words "CHICAGO'S PIZZA" in red capitalized letters, outlined with black trim, with the word "PIZZA" directly below the word "CHICAGO'S". (Id.) Two horizontal green bars are on either size of the word "PIZZA," totaling four bars. (Id.) Instead of "With-A-Twist" written in black lower-case script below the word "PIZZA," defendant's logo contains the words "The Original" in black lower-case script above the word "CHICAGO." (Id. at ¶ 13.)[1]

---

[1] Plaintiff alleges that defendant occasionally used the logo without "The Original" and with the addition of the elements "& CURRY" and the factually incorrect elements "EST. 1994," but has

2

Defendant's logo was used on its Facebook page, its website, and on its pizza boxes. (Id. at ¶ 14). Plaintiff alleges that defendant sought to duplicate plaintiff's menu and even contacted a third-party vendor that plaintiff had used. (Id. at ¶ 15.).

On March 27, 2019, defendant's restaurant opening was promoted on Facebook through the Elk Grove Laguna Forum Facebook page. (Id., ¶ 16). Plaintiff alleges that several Facebook users mistakenly associated defendant's restaurant with plaintiff's restaurant and believed defendant's restaurant to be another CPI location in Elk Grove, California. (Id., ¶ 17).

On April 4, 2019, plaintiff contacted defendant and demanded that it immediately cease and desist from using the alleged infringing logo. (Id. at ¶ 18). A follow up letter was sent on July 23, 2019.  Defendant did not comply, and instead opened a second location using the same logo. (Id.; ECF No. 68-1 at ¶ 19).

    B. Procedural History

Plaintiff filed this action on November 22, 2019, alleging (i) false designation of origin, false descriptions, and unfair competition; (ii) trademark infringement; and (iii) unfair competition claims against defendant.  (ECF No. 1.) On November 25, 2019, plaintiff's counsel sent defendant's agent for service a request for waiver of the service of summons along with a copy of the complaint and other accompanying documents. (ECF No. 3; ECF No. 68-1 at ¶ 4.) On February 18, 2020, defendant's counsel returned the waiver of the service of summons form, which was then filed with this court. (ECF No. 7.)

On March 4, 2020, defendant filed a motion to dismiss for lack of jurisdiction, which was denied by this court on July 6, 2020.  (ECF Nos. 9, 20.) On July 21, 2020, defendant filed its answer.  (ECF No. No. 21.) Subsequently, on July 22, 2020, defendant amended its answer and filed a cross-complaint against various parties including plaintiff, alleging (i) false designations of origin, false descriptions; (ii) trademark infringement; (iii) theft of trade secrets; (iv) fraudulent

---

always done so in connection with red block lettering surrounded by black trim and four green horizontal lines preceding and following the word "PIZZA." (ECF No. 1 at ¶ 14).

registration of trademark; and (v) fraud and unfair competition. (ECF No. 22.) On October 12, 2021, this court dismissed defendant's counterclaims. (ECF No. 45.)

On October 29, 2021, the court approved the parties' joint stipulation to extend time to amend cross-complaint and modify scheduling order. (ECF No. 49.) Defendant was given until December 27, 2021, to amend the cross-claims but failed to do so.  (See id.) To date, defendant has not filed amended pleadings. Plaintiff also alleges that to date, defendant has failed to respond to discovery requests served on defendant on January 6, 2022. (ECF No. 68-1 at ¶ 11.)

On June 27, 2022, plaintiff filed a motion to strike defendant's answer and request to enter clerk's default. (ECF No. 56.) Defendant failed to timely file an opposition in compliance with Local Rule 230(c). (ECF No. 60.)  On September 6, 2022, defendant's attorney filed a statement of non-opposition, indicating that since December 2021, defendant's attorney has not had contact with defendant despite defendant's attorney's attempts to contact defendant, and noting defendant's status as a suspended corporation by the California Secretary of State.  (ECF No. 61). The court granted plaintiff's unopposed motion and the Clerk of Court entered default against defendant. (ECF No. 62, 64.)

II.     Legal Standards – Default Judgment

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court considers the following factors:  (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily disfavored.  Id. at 1472.

Generally, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).  In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).

### III. Discussion

#### A. Eitel Factors

##### 1. Factor One: Possibility of Prejudice to Plaintiff

Potential prejudice to the plaintiff weighs in favor of granting default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff will be severely prejudiced absent a default judgment because it would be denied the right to judicial resolution of its infringement claims as a result of defendant's failure to participate in the action. Accordingly, the first factor weighs in favor of default judgment.

##### 2. Factors Two and Three: The Merits of the Substantive Claim and the Sufficiency of the Complaint

Factors two and three are considered together due to the relatedness of the inquiries.  The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

To prevail on a trademark infringement claim, a plaintiff must show that (1) the plaintiff has a valid, protectable trademark, and (2) that defendant's use of the mark is likely to cause confusion. Applied Info. Scis. Corp. v. eBay. Inc., 511 F.3d 966, 969 (9th Cir. 2007).  First, plaintiff has a valid, protectable trademark.  For marks that are not federally registered, a plaintiff can establish that it has a valid, protectable trademark if the mark is either (1) descriptive but has

acquired a secondary meaning in the market; or (2) a suggestive mark, which is inherently distinctive and protectable. Id. at 970.

As recognized in this circuit, "(s)econdary meaning has been defined as association nothing more," Carter–Wallace, Inc. v. Procter & Gamble Co., 434 F.2d 794, 802 (9th Cir. 1970). Plaintiff alleges that, "as result of extensive advertising, [its logo] has become distinctive and is widely recognized by the general consuming public of the United States as a designation for the source" of its goods and services. (Id. at ¶ 10). Accordingly, plaintiff has adequately alleged that its logo has a second meaning.

Plaintiff has also sufficiently alleged that its logo is a "suggestive mark." A suggestive mark "conveys an impression of a good [or service] but requires the exercise of some imagination and perception to reach a conclusion as to the product's nature." Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1058 n. 19 (9th Cir. 1999) (using "Roach Motel" insect traps as an example). It requires "exercise of some imagination and perception" to conclude from plaintiff's logo that the nature of the products are Indian-inspired dishes with Middle Eastern spices. Thus, the logo is suggestive and inherently protectable.

Second, plaintiff has alleged that defendant's use of plaintiff's trademark is likely to cause confusion. In the Ninth Circuit, likelihood of confusion is assessed using the eight non-exclusive factors set forth in AMF Inc. v. Sleekcraft Boats: (1) strength of the protected mark; (2) proximity and relatedness of the goods; (3) similarity of the marks; (4) evidence of actual customer confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of product expansion. 599 F. 2d 341, 348-349 (9th Cir. 1979); Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1125 (9th Cir. 2014).

Here, the Sleekcraft factor weighs in favor of plaintiff. The strength of a "trademark is evaluated in terms of its conceptual strength and commercial strength." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir. 2000). Conceptual strength depends upon where a mark falls along a five-part spectrum—generic, descriptive, suggestive, arbitrary, and fanciful. E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1291 (9th Cir. 1992). Suggestive marks,

although stronger than descriptive or generic marks, are still "presumptively weak." Brookfield, 174 F.3d at 1058.  However, such marks "may be strengthened by such factors as extensive advertising, length of exclusive use, or public recognition." Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1144 (9th Cir. 2002) (cleaned up).  While plaintiff's logo, as discussed above, is suggestive, plaintiff also alleges having engaged in extensive advertising and marketing since July 2015, leading plaintiff's logo to become widely recognized by consumers who identify the logo with Indian-influenced pizzas with Middle Eastern spices. (ECF No. 1 at ¶¶ 9, 10, 19). Thus, this factor favors plaintiff.

The second Sleekcraft factor, proximity and relatedness of the goods, also favors plaintiff. "Directly competing goods are in the closest proximity under the likelihood of confusion analysis." Conversive Inc. v. Conversagent, Inc., 433 F. Supp. 2d 1079, 1091 (C.D. Cal. 2006). Here, the parties sell the same goods: Indian-style pizzas featuring an array of Indian and Middle-Eastern spices and wings, including using the same and/or similar names for numerous menu items. (ECF No. 1 at ¶¶ 9, 12). The stores are also in close proximity—less than six miles apart. (Id., ¶ 12). Thus, this factor strongly favors likelihood of confusion.

The third factor is the similarity of the marks is based on a comparison of their sight, sound, and meaning. Sleekcraft, 599 F.2d at 351. "Similarities weigh more heavily than differences." Entrepreneur Media, 279 F.3d at 1144. Here, the logos are almost identical. Plaintiff's logo is comprised of the text "CHICAGO'S PIZZA" in red capital letters outlined with black trim; two horizontal green bars on each size of the word "PIZZA"; and the text "With-A-Twist" in black script, with only the first letter of each word capitalized.  (ECF No. 1 at ¶ 9). Similarly, defendant's logo is comprised of the text "CHICAGO'S PIZZA" in red capital letters outlined with black trim; and two horizontal green bars on either side of the word "PIZZA."  (Id. at ¶¶ 13, 14).  The words "The Original" appears in black script, with only the first letter of each word capitalized.  These similarities in sight, sound, and meaning weigh in favor of plaintiff.

Plaintiff has adequately alleged the fourth Sleekcraft factor, actual confusion. On March 27, 2019, defendant's opening was promoted on Facebook through the Elk Grove Laguna Forum Facebook page. (Id., ¶ 16).  Plaintiff alleges customer confusion immediately ensued and several

7

1   Facebook users mistakenly associated defendant with plaintiff and believed this to be another CPI

2   location in Elk Grove, California.  (Id., ¶ 17). Thus, this factor weighs in plaintiff's favor.

3         The fifth Sleekcraft factor, whether convergent marketing channels increase the likelihood

4   of confusion, also supports plaintiff.  599 F.2d at 353. "In assessing marketing channel

5   convergence, courts consider whether the parties' customer bases overlap and how the parties

6   advertise and market their products." Pom Wonderful LLC, 775 F. 3d at 1130 (internal citation

7   omitted).  Here, the parties' customer bases overlap because they both sell the same niche

8   products—Indian-style pizzas with Indian and Middle-Eastern spices and wings—just less than

9   six miles away from each other.  (ECF No. 1 at ¶¶ 9, 12). Additionally, plaintiff has engaged in

10  extensive advertising in connection with its unique product, while defendant has taken steps to

11  target plaintiff's marketing channels and customer bases by bearing the infringing logo on its

12  storefront, menus, and pizza boxes, as well as through its marketing efforts on its Facebook page

13  and website. (Id., ¶¶ 10, 15, 18). Accordingly, plaintiff has adequately alleged that defendant

14  caused a high likelihood of confusion by deliberately targeting the general class of pizza

15  consumers within miles of plaintiff.  Therefore, this factor weighs in favor of plaintiff.

16        The sixth factor, the type of goods and the degree of care likely to be exercised by the

17  purchaser favors plaintiff.  The likelihood of confusion is determined based on a "reasonably

18  prudent consumer."  Brookfield, 174 F.3d at 1060. When "dealing with inexpensive products,

19  customers are likely to exercise less care, thus making confusion more likely."  Id.  Where marks

20  are virtually identical and they are used with identical products or services, customers are likely

21  to be confused.  See id. at 1056.  Here, purchasing pizzas, breadsticks, and chicken wings, is not

22  an expensive undertaking that would cause purchasers to exercise a high degree of care. And

23  plaintiff alleges the parties offer the same goods: Indian-style pizzas featuring an array of Indian

24  and Middle-Eastern spices and wings. (ECF No. 1 at ¶¶ 9, 12). Thus, reasonably prudent

25  customers are likely to be confused and this factor weighs in plaintiff's favor.

26        The seventh factor, intent and willful trademark infringement, occurs when a defendant

27  knowingly and intentionally infringes a mark. Earthquake Sound Corp. v. Bumper Indus., 352

28  F.3d 1210, 1216-17 (9th Cir. 2003). "Where an alleged infringer chooses a mark he knows to be

similar to another, one can infer an intent to confuse." Entrepreneur Media, Inc., 279 F.3d at 1148. Here, plaintiff alleges that in early 2019, defendant approached a third-party vendor utilized by plaintiff to replicate plaintiff's menu. (ECF No. 1 at ¶ 15). Further, plaintiff contacted defendant twice demanding that defendant immediately cease and desist from using its logo but defendant did not comply. (Id. at ¶ 18.) These allegations support an inference that defendant is aware of the value of plaintiff's logo and took purposeful and calculated actions to profit from the consumer goodwill associated with plaintiff's logo. Accordingly, this factor favors plaintiff.

Upon consideration of the above Sleekcraft factors, the undersigned finds that plaintiff has adequately pleaded a likelihood of confusion and a meritorious trademark infringement claim. Brookfield Commc'ns, Inc., 174 F.3d 1036, 1054 (9th Cir. 1999) (noting that the Sleekcraft factors are pliant and that while "some factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors.") The court notes that, in its motion for default judgment, plaintiff alleged to have recently learned that defendant's principal expanded to a new restaurant that also bears the infringing logo. (ECF No. 68-1 at ¶ 19). This allegation supports the last factor and tips the balance further in favor of plaintiff.

The likelihood of confusion test is also used in deciding false designation of origin and unfair competition. See New W. Corp. v. NYM Co. of California, 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical is there a 'likelihood of confusion?'"); Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012) ("The Ninth Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims under the Lanham Act.") (internal quotations omitted). Therefore, based on the above analysis of the Sleekcraft factors, plaintiff has sufficiently pleaded its claims for trademark infringement, false designation of origin, and unfair competition. Accordingly, the second and third Eitel factors favor default.

////

                3.    Factor Four: The Sum of Money at Stake

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). "This requires . . . the court [to] assess whether the recovery sought is proportional to the harm caused by [the] defendant's conduct." Landstar Ranger, Inc. v. Parth Enters., Inc., 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).  Here, plaintiff has requested an injunction and attorneys' fees and costs.  The requested costs of suit and attorneys' fees are authorized by statute and the Federal Rules of Civil Procedure and, as to attorneys' fees, constitute a discretionary award.  See 15 U.S.C. § 1117(a); Fed. R. Civ. P. 54(d). Accordingly, the fourth Eitel this factor favors granting default judgment.

                4.    Factor Five: The Possibility of a Dispute Concerning Material Facts

Where the clerk has entered default and defendant has not appeared, there is no likelihood that any genuine issue of material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, there is no possible dispute concerning the material facts because the factual allegations in the complaint are taken as true given the clerk's entry on September 27, 2022.  Further, defendant's first amended crossclaim was stricken. (ECF No. 22.) Accordingly, there is no likelihood that a genuine issue of material fact exists.  Therefore, the fifth Eitel factor favors entry of default judgment.

                5.    Factor Six: Whether the Default Was Due to Excusable Neglect

Defendant cannot reasonably claim excusable neglect as it had adequate notice of the claims against it and was aware of its obligation to participate in this action. Defendant was properly served with plaintiff's complaint and summons.  (ECF No. 7.) Defendant filed responsive pleadings, including a motion to dismiss, answer, amended answer, and cross-complaint.  (ECF Nos. 9, 21, 22.) However, defendant has not participated in this lawsuit, and has

been unresponsive to both defendant's own counsel and plaintiff's counsel since December 2021. (ECF No. 12; ECF No. 68-1 at ¶¶ 12-18.) Thus, this factor weighs in favor of entering default judgment.

### 6. Factor Seven: The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472.  However, this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Accordingly, the policy does not, by itself, preclude the entry of default judgment.

Pursuant to the above analysis, the Eitel factors weigh in favor of entering default judgment for trademark infringement, false designation of origin, and unfair competition against defendant.

### B. Permanent Injunction

Plaintiff seeks a permanent injunction, which the undersigned finds is appropriate here. To be granted a permanent injunction, plaintiff must show (1) that it has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. See RBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

Here, irreparable harm exists because plaintiff cannot control the quality of the infringing products served by defendant. Defendant's infringement will continue to threaten the substantial goodwill plaintiff worked hard to acquire overtime through its strict control over the quality of its products and the services associated with plaintiff's logo. (ECF No. 1 at ¶ 10). See Brooklyn Brewery Corp. v. Black Ops Brewing, Inc., 156 F. Supp. 3d 1173, 1185 (E.D. Cal. 2016) (granting preliminary injunction where defendant's use of plaintiff's trademark "will cause [p]laintiff to lose its ability to control its brand reputation and goodwill, since what could be perceived by consumers as the quality of [p]laintiff's product risks no longer being within [p]laintiff's control").

The second factor, inadequate legal remedies, support a permanent injunction. Century 21 Real Est. Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988) ("[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.").

The balance of hardships weighs in favor of plaintiff, as plaintiff has suffered irreparable harm, as described above. By contrast, there is no evidence that defendant will suffer any harm if injunctive relief is granted.[2]

Finally, the public interest favors injunctive relief because "[t]he public has an interest in avoiding confusion between two companies' products." Internet Specialties West, Inc. v. Milon–DiGiorgio Enters., Inc., 559 F.3d 985, 993 n. 5 (9th Cir. 2009). Accordingly, upon consideration of the above factors, the undersigned recommends that a permanent injunction be granted. See Philip Morris, 219 F.R.D. at 502 ("injunctive relief is appropriate because the claims otherwise warrant an injunction, and [d]efendant, though well aware of serious claims brought against it, has chosen to ignore this lawsuit. Failure to grant the injunction would needlessly expose the [p]laintiff to the risk of continuing irreparable harm.").

### C. Costs and Attorneys' Fees

The Lanham Act expressly provides for the award of reasonable attorneys' fees and costs to "prevailing parties" in "exceptional cases." 15 U.S.C. § 1117(a)(3) (2011); see also Fed. R. Civ. P. 54(d). "The term 'exceptional cases' is generally accepted to mean cases in which trademark infringement is 'deliberate and willful.'" PepsiCo v. Triunfo-Mex, Inc., 189 F.R.D. 431, 432 (C.D. Cal. 1999). Additionally, "a case may be deemed 'exceptional,' and merit an award of attorneys' fees under the Lanham Act, when [d]efendant disregards the proceedings and does not appear." Philip Morris USA Inc., 219 F.R.D. at 502. Here, plaintiff alleges defendant's conduct was willful and deliberate. (ECF No. 1 at ¶¶ 15, 18) (stating that in 2019, defendant

---

[2] Plaintiff rightly points out that, even if defendant suffers some lost sales, of which there is no evidence, "where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." Cadence Design Sys., Inc. v. Avant! Corp., 125 F.3d 824, 830 (9th Cir. 1997) (quotation marks; alteration omitted).

approached a third-party vendor utilized by plaintiff to replicate plaintiff's menu and that defendant did not comply with plaintiff's two requests to cease and desist use of its logo).

The undersigned has reviewed the invoices provided by plaintiff and agrees that plaintiff's request for attorneys' fees is reasonable. Defendant filed responsive pleadings, including a motion to dismiss, answer, amended answer, and cross-complaint before ultimately abandoning litigation in December 2021. (ECF Nos. 9, 21, 22.) See Wecosign, Inc., 845 F. Supp. 2d at 1086 (granting default judgment and finding plaintiff's request for $222,946 reasonable where trademark action was complex and where defendants initially appeared). Therefore, the undersigned recommends that plaintiff be awarded attorneys' fees totaling $139,184.50. (ECF No. 68-1 at ¶ 27). Additionally, the undersigned recommends that plaintiff be awarded costs of $674.79. (ECF No. 68-1 at ¶ 26); see 15 U.S.C. § 1117(a), F.R.C.P. 54(d).

## FINDINGS AND RECOMMENDATIONS

Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiff's Motion for Default Judgment, ECF No. 68, be granted.
2. Defendant, its agents, representatives, employees, assigns, and suppliers, and all persons acting in concert or privity with Defendant, be permanently enjoined from the following activities:
    a. Using the CPI Logo, or any other name, mark, designation, or depiction in a manner that is likely to cause confusion regarding whether Defendant is affiliated or associated with or sponsored by CPI;
    b. Practicing trademark infringement, unfair competition, false designation of origin, passing off, false advertising, against CPI or misappropriation of CPI's trademark rights; and
    c. Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs 2(a) and 2(b) above.
3. Defendant be ordered to deliver to plaintiff for destruction all infringing articles and associated packaging and promotional materials pursuant to 15 U.S.C. § 1118.

4. Defendant be ordered to engage in corrective advertising to the extent necessary to correct any consumer confusion or misperceptions resulting from defendant's unlawful acts complained of above.

5. Defendant be ordered to file with the Court and serve upon plaintiff a written report under oath setting forth in detail the manner and form in which defendant has complied with the injunction and judgment within thirty (30) days after the service of the injunction and judgment upon defendant.

6. Defendant shall pay plaintiff's costs of suit in the amount of $674.79 and attorneys' fees in the amount of $139,184.50.

7. The Clerk of Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  January 17, 2024

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

21,chic.2373